UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| CHASE M. COURVILLE | : | CIVIL ACTION NO. 16-0684<br>SEC. P |
| VS. | : | JUDGE ROBERT G. JAMES |
| WARDEN SMITH, ET AL. | : | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B), are cross-motions for summary judgment filed by plaintiff Chase Courville [doc. # 42], and defendants Warden Smith, Assistant Warden Bass, Lt. Sgt. Smith, Sgt. Davis, Sgt. Riley and Sgt. Washington [doc. # 32]. Also before the court is plaintiff's motion for preliminary injunction [doc. # 36]. For reasons stated below, it is recommended that the motions [doc. #s 32, 42 & 36] all be DENIED, and that the matter be referred to the assigned magistrate judge for an evidentiary hearing.

### Procedural History

On May 4, 2016, Chase Courville, who, during the relevant period, was an inmate housed at the Tensas Parish Detention Center ("TPDC"), and then later transferred to the David Wade Correctional Center ("DWCC"), filed the instant pro se civil rights complaint under 42 U.S.C. § 1983 against Warden Smith, Assistant Warden Bass, Lt. Sgt. Smith, Sgt. Davis, Sgt. Riley, Sgt. Washington, and Major Washington. Along the way, he amended his complaint on at least two occasions. [doc. # s 12 & 29].

Courville alleges that on June 6, 2015, at approximately 8:00 p.m., while housed at the

TPDC, he was stabbed in the back. He was escorted to "medical" by Lt. Sgt. Smith, cleaned, bandaged, escorted to A-Dorm Lock Down, and placed in protective custody in Cell #4. On June 7, 2015, he was escorted to the Warden's office and questioned before Warden Smith, Assistant Warden Bass, and Major Walker about inmate request forms received by the Warden raising concerns for plaintiff's safety. Specifically, he was shown two request forms stating that inmates "were going to kill [him] if they could ever get their there (sic) hands on [him]." (Amend. Compl. [doc. # 12]). Plaintiff asked to be shipped to another facility and alleges that Warden Smith asked Major Walker to put him on the transfer list. He then was escorted back to A-Dorm Lock Down Cell #4.

On June 17, 2015, at approximately 9:15 p.m., Lt. Sgt. Smith, Sgt. Davis, Sgt. Riley and Sgt. Washington came into A-Dorm to let the inmates housed in all three protective custody cells out for showers simultaneously. Once the guards observed the inmates entering the showers, they left them alone. While plaintiff was preparing to shower, he was attacked in his cell and later in the day room, by an inmate with a knife, "in plain sight of the guards in main control." (Amend. Compl. [doc. # 12]). After hitting the window to get the guards' attention, he was brought to medical, where photographs were taken and an ambulance called. He was transported to several hospitals for treatment of his wounds. After the events at issue, plaintiff was transferred to the DWCC, where he remains in custody.

Courville asserted claims against defendants for failure to protect him from the attack, and the ensuing failure to provide medical care. He seeks compensatory and punitive damages in the amount of $100,000 each. (Amend. Compl. [doc. # 29]).

On November 14, 2016, the court completed initial screening pursuant to 28 U.S.C. §§

2

1915 and 1915A, and recommended dismissal of plaintiff's claims for failure to provide medical care and all claims against Major Walker. (Nov. 14, 2016, R&R [doc. # 13]. The court contemporaneously ordered service, via U.S. Marshal, on remaining defendants, Warden Smith, Assistant Warden Bass, Lt. Sgt. Smith, Sgt. Davis, Sgt. Riley, Sgt. Washington, and Major Washington. (Nov. 14, 2016, Mem. Order [doc. # 14]). On December 14, 2016, in accordance with the R&R, the District Court dismissed plaintiff's claims for failure to provide medical care and all claims against Major Walker. (Dec. 14, 2016, Judgment [doc. # 16]). On February 3, 2017, the remaining defendants answered the complaint. (Answer [doc. # 19]).

On April 12, 2017, defendants filed the instant motion for summary judgment on the issue of exhaustion of administrative remedies. On April 21, 2017, plaintiff filed a motion for preliminary injunction. On June 23, 2017, plaintiff filed his own motion for summary judgment on the issue of exhaustion of remedies. After delays for briefing and various discovery issues, the matter is now before the court.

### Preliminary Injunction

In his motion, Courville alleges that the same inmate who stabbed him at the TPDC also is incarcerated at the DWCC. He contends that this presents an obvious security risk. Courville brought this matter to the attention of officials at the DWCC, but to no avail. In support of his motion, Courville adduced copies of various letters dated from April to August 2016, that he apparently sent to officials or individuals who are not parties to this suit. (M/Prel. Injunction, Exhs.). Courville seeks protection from this dangerous inmate, and a transfer or placement in protective custody.

To obtain a preliminary injunction the movant must establish:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted).

The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally demonstrate the need for its issuance. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) (citation omitted).

At minimum, plaintiff has not satisfied the first two requirements for a preliminary injunction. First, there is no substantial likelihood of success on the merits because the present defendants are (or were) affiliated with the TPDC, not the DWCC. Thus, any claim for injunctive relief would prove ineffective because the present defendants lack the authority to redress the circumstances of plaintiff's present confinement. *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir.2013) (plaintiff's request for injunctive relief properly dismissed where defendant does not have the "power[ ] to redress the injuries alleged"); *see also Byrd v. Malil*, No. 14-0788, 2017 WL 3585426, at *3 (E.D. Tex. July 5, 2017), R&R adopted sub nom. *Byrd v. Marshall*, 2017 WL 3582307 (E.D. Tex. Aug. 17, 2017).

Second, plaintiff has not demonstrated that he faces a threat of irreparable injury – presently. His letters to DWCC officials are dated as early as April 2016. Almost one and one-half years have since passed, with no indication that plaintiff has suffered another attack. In short, the court finds that plaintiff has not satisfied the exacting standard required to support injunctive relief.

## Summary Judgment

**I.  Principles**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "The court *need* consider only the cited materials, but it *may* consider other materials in the

record." Fed.R.Civ.P. 56(c)(3) (emphasis added). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[1] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

**II.    Law**

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and is required even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 126 S.Ct. 2378, 2382-83 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective,

---

[1] I.e., beyond doubt.

or not. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua*, 342 Fed. Appx. 933, 934 (5th Cir. 2009) (citing *Woodford, supra*). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id*. Exhaustion is an affirmative defense; thus, the burden is on defendant to establish that plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). If the court considers evidence beyond the pleadings to resolve the exhaustion issue, then the nonmoving party is entitled to the protections of Rule 56. *Id*.

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter, supra* (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton*, 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted). In addition, exhaustion applies to claims brought against defendants in their official and/or individual capacities. *See e.g., Williams v. Henagan*, 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas*, 76 Fed. Appx. 564 (5th Cir. 2003).

A prisoner is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *Hicks v. Lingle*, 370 F. Appx. 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish*, Civ. Action No. 13-5732, 2014 WL 1457777 (E.D. La. Apr. 15, 2014). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still

7

must exhaust all "available" steps. *Ates, supra* (and cases cited therein); *see also Hicks, supra* (inmate required to proceed to second step even though procedure said only that inmate "may appeal" if dissatisfied with first step response). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6 (2001).

The Supreme Court recently explained that "[u]nder § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1858 (2016). The Court then looked to dictionary definitions of "available," to conclude that an inmate is "required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. (citations omitted).[2]

The Court recognized three circumstances where an inmate's duty to exhaust administrative remedies may be excused, or in statutory parlance, deemed unavailable. *Id*. First, an administrative procedure is unavailable where officers consistently are unable or unwilling to provide relief to aggrieved inmates. *Id*. (citation omitted). Second, exhaustion is not required where an administrative scheme is so opaque that it is unknowable in the sense that no ordinary prisoner can discern its requirements. *Id*. Finally, the administrative process is rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance

---

[2] Whether administrative remedies are "available" is a question of law, but the resolution of that question may turn on questions of fact. *Leggett v. Lafayette*, 608 Fed. Appx. 187, 190 (5th Cir.2015).

process through machination, misrepresentation, or intimidation." *Id.*[3]

The Fifth Circuit consistently has held that an inmate's ignorance of a prison's grievance procedures does not excuse his noncompliance. *Aguirre v. Dyer*, 233 Fed. Appx. 365 (5th Cir. 2007) (citation omitted); *Simkins v. Bridges*, 350 Fed. Appx. 952, 953-954 (5th Cir. 2009) (citation omitted); *Plaisance v. Cain*, 374 Fed. Appx. 560, 561 (5th Cir. 2010) (citation omitted). Nonetheless, inmates should have "avenues for discovering the procedural rules governing their grievances." *Dillon, supra* (citations omitted). When an inmate has no means of verifying the administrative grievance process, then misleading information by prison officials may make remedies unavailable. *Id.* "If impediments to filing grievances render remedies unavailable at one facility, remedies may become available again once a prisoner has been transferred, unless there are other problems at the new facility." *Dillon*, 596 F.3d at 267-268 (citing *Bryant v. Rich*, 530 F.3d 1368, 1379 (11th Cir.2008)).

Nonetheless, when a prisoner is transferred to another prison and is advised by a prison guard and inmate counsel that he cannot file a grievance at the new facility arising out of an incident suffered at the former facility, then administrative remedies may not be available – at least where the inmate has no means to verify the officials' claims. *Dillon*, 596 F.3d at 268. Furthermore, citing decisions from other circuits, the Fifth Circuit, in *Cowart v. Erwin*, endorsed the parties' stipulation that an inmate need not exhaust additional steps in a county jail's

---

[3] "Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." *Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir.2015). Moreover, remedies are not available where institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies. *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir.2003).

administrative process because they effectively became "unavailable" after the inmate was transferred out of the county jail's custody. *Cowart v. Erwin*, 837 F.3d 444, 451 n.13 (5th Cir. 2016).

### III. Analysis

The uncontroverted evidence establishes that the TPDC had a three step Administrative Remedy Procedure ("ARP") in effect during the relevant period. (Declaration of Warden Pat Smith; Defs. MSJ, Exh. A). The first step of the ARP requires an offender to file a grievance that is reviewed by the assistant warden. *Id*. Step two of the ARP is to request review by the Warden. *Id*. Step three is to request a review by the sheriff. *Id*. According to Warden Smith, the three-step ARP policy is explained to all inmates at the facility. *Id*.

However, defendants did not adduce a copy of the ARP in support of their motion for summary judgment. They also did not adduce evidence establishing that an aggrieved inmate was required or permitted to proceed to the remaining steps of the ARP if he is dissatisfied with the initial decision. *See Cowart supra* (the administrative procedure did not authorize a "next step" in the absence of written findings at the first step). In fact, there is no evidence that the ARP, by its terms, encompasses the type of harm suffered by plaintiff. *See Cowart, supra* ("[e]xhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them"); *Allard v. Anderson*, 260 Fed. Appx. 711, 715 (5th Cir.2007) (county jail grievance procedure no longer available after plaintiff was transferred and no longer an inmate at that facility). These evidentiary omissions suffice alone to preclude summary judgment in favor of defendants.

Furthermore, in response to defendants' motion, plaintiff submitted a copy of a June 24,

2015, grievance that he purportedly submitted to the TPDC regarding the incident(s) at issue. (Pl. MSJ, Exh. J). In his grievance, plaintiff requested, *inter alia*, a transfer to another facility. *Id*. Plaintiff also adduced copies of letters addressed to Warden Smith that are dated July 6 and August 10, 2015. (Pl. MSJ, Exhs. H & I). The letters re-urge plaintiff's request for a transfer, and one references plaintiff's brush with death at the facility. *Id*. Therefore, the letters arguably constitute invocation of the second step of the TPDC's ARP process.

As for the third step, the record contains evidence that plaintiff sent a grievance to DWCC, apparently in April 2016 regarding the June 2015 incident. [doc. # 12-1]. However, Warden Tommy Garrett rejected the grievance stating that, "Issues deal with Tensas Detention Center and occurred over 90 days ago. You should have filed your ARP with Tensas when it happened." *Id*. Of course, there is no evidence that the TPDC grievance procedure has any time limits at all.

Upon receipt of Warden Garrett's response to his grievance, plaintiff penned an "Emergency Situation" letter to the "Chief of Operations," in which he stated that he was trying to follow the grievance policy, and requested help explaining what he needed to do next. (Pl. MSJ Memo., Exh. N [doc. # 53]). However, the Chief of Operations ignored plaintiff's request for assistance.[4]

In short, plaintiff has adduced evidence that once he was transferred out of the TPDC, administrative remedies no longer were available. He received arguably incorrect information from prison officials, and despite his repeated requests, was not provided a copy of the TPDC's

---

[4] Plaintiff also stated, under penalty of perjury, that he spoke with inmate counsel who advised him to "go ahead and file once they reject it, go straight to the courts." (Pl. MSJ Memo., pg. 4 [doc. # 53]).

11

grievance procedures so he could verify and exhaust any remaining steps in the process.

Accordingly, the undersigned finds that defendants have not established beyond peradventure that plaintiff failed to exhaust *available* administrative remedies. *See Dillon, supra*; *Cowart, supra*; *Allard, supra*. Rather, genuine disputes of material fact preclude summary judgment in favor of either party.

### Conclusion

For the above-stated reasons,

IT IS RECOMMENDED plaintiff's motion for preliminary injunction [doc. # 36] and the parties' cross-motions for summary judgment [doc. #s 32 & 42] be DENIED.

IT IS FURTHER RECOMMENDED that the matter be referred to the assigned magistrate judge to hold an evidentiary hearing on exhaustion (if defendants continue to maintain that defense) and on the merits (to include all witnesses and evidence to be presented by all parties), and thereafter, to issue findings to the court, via report and recommendation.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 18th day of October 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE